UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GARLAND W. WILLIAMSON, JR.                    CIVIL ACTION

VERSUS                                        NO. 19-254

JERRY LARPENTER ET AL.                        SECTION "B" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Garland W. Williamson, Jr., is a prisoner formerly incarcerated in the Terrebonne Parish Criminal Justice Complex ("Terrebonne") in Houma, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Americans With Disabilities Act ("ADA"). 42 U.S.C. § 12101 et seq. The named defendants are Terrebonne Parish Sheriff Jerry Larpenter; Terrebonne Parish President Gordon Dove; Terrebonne Medical Director Richard Neal; Terrebonne Warden Bergeron; and Dr. William Lo, a psychiatrist at Terrebonne. Williamson alleges that he was provided inadequate medical care and subjected to unconstitutional conditions of confinement, which aggravated his mental condition. He seeks monetary damages, injunctive relief "mandated by law and the American Disability Act (sic)" and, alternatively, transfer to a hospital facility. Record Doc. No. 1, Complaint at ¶ V.

On March 18, 2019, I conducted a telephone conference in this matter. Participating via telephone were plaintiff, pro se; and William Dodd and Brian Marceaux, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Williamson's original complaint, which is sworn under penalty of perjury, Record Doc. No. 1 at p. 9, was submitted on a form for use in pursuing claims under Section 1983, but Williamson specifically invoked the ADA three times in his pleading. Id. at pp. 5, 7, 8. He alleged that he has been "diagnosed suicidal and depressed . . . involving substance abuse." Id. at p. 6. He stated that he was "placed on life support [at Leonard J. Chabert Medical Center ('Chabert Hospital') in Houma, Louisiana] on or about 11/28/18 due to suicide attempt by overdose . . . ." Id. He wrote that shortly after his release from the hospital, "on 12/3/18 [he] drove [a] vehicle into a tree full of alcohol and drugs and failed in [another] suicide attempt." Id. at p. 7. He alleged that the incident resulted in his arrest and placement in Terrebonne jail on charges of driving while intoxicated, hit and run and theft. Id.

Williamson stated in his original complaint that he advised prison officials, including defendants Neal and Dr. Lo, "via kiosk machine" of his mental conditions and asserted "my objection to the denial of my anti-psychotic medications of Serequel (sic) and Remron (sic), . . . replaced with Celexa." Id. He wrote that the Celexa he was provided at Terrebonne did not address his depression, suicidal tendencies or mood and behavior alterations. Id. He alleged that prison officials' "inhumane and torturous treatments of inmates [like himself] of diagnosed mental illness" violated the ADA, particularly in that he was not provided with "properly prescribed medications and

housing and treatments and living conditions and therapies." Id. He complained specifically that, when placed on suicide watch in the jail, he "was stripped of all his clothing, placed in a green smock, along with 6 other inmates on a 10 by 10 cell made of cold concrete, dirty with old food trays, plastic sandwich bags, directly on floor, no shower, no hygiene, still denied prescribed medications, . . . until you notify Dr. . . . Lo on his one day weekly visit, [that] you will not harm yourself or anyone else. . . ." Id. at p. 8.

In his statement of facts filed as a supplement to his complaint in response to the court's order, Record Doc. Nos. 5, 7, Williamson clarified that he was then in jail serving three consecutive six-month prison sentences imposed separately on December 22, 2018, and January 22, 2019, arising from the incident in which he drove a vehicle into a tree while intoxicated. Record Doc. No. 7 at p. 1. He complained specifically that "therapy and groups and programs [are] not being provided" at Terrebonne, including no access to "a mental health facility" for inmates like himself with long histories of "obvious substance abuse issues." Id. at pp. 4, 8.

During his Spears testimony, Williamson repeated that he currently is incarcerated in Terrebonne based upon a December 21, 2018 conviction for driving while intoxicated and his related failure to comply with a program he was ordered to attend. He testified that he was arrested on December 3, 2018, shortly after his release from Chabert Hospital in Houma, where he was being treated for injuries after a suicide attempt. Williamson

confirmed that he makes two kinds of claims in this case: (1) the conditions of his confinement are not appropriate for his mental health condition and; (2) the treatment he has received for his mental health condition has been inadequate or improper.

Williamson testified that he was first brought to Terrebonne on December 3, 2018, when he was arrested on the charges for which he was subsequently sentenced. He testified that before he was arrested, he had just been released at the end of November 2018 from Chabert Hospital after a suicide attempt. He said his arrest occurred "just days" after he tried again to commit suicide by driving a vehicle into a tree.

He confirmed that he had received and reviewed the medical records produced by the Terrebonne Parish Sheriff in response to my order, Record Doc. Nos. 6, 10, and he confirmed that they are accurate.

As to his complaints about his housing in Terrebonne jail, he complained that he is being housed with other prisoners in "general population" with no access to a separate mental health clinic operated by Terrebonne Parish. He said the jail has no psychiatrist on staff, just one who visits the prisoners with mental health issues once a week on Wednesdays for 30 minutes. He identified this psychiatrist as defendant Dr. Lo. Williamson said he has been seen by Dr. Lo at the jail, but not upon request. He testified that he was first seen by Dr. Lo in the jail "when I was placed on suicide watch . . . ." He said that when he has bouts with depression, feels suicidal or has "mood issues," jail personnel "just dress you up in a green smock and throw you in a holding cell with four

or five other people until you see Dr. Lo on Wednesdays [or] until you tell [him]. . . that you're not feeling suicidal anymore and you're not going to hurt anybody and you're okay." He said jail personnel returned him to general population after he was released from suicide watch without getting "any type of help for diagnosed treatments."

He testified that he has seen Dr. Lo twice while in Terrebonne, once on December 17, 2018, when he was placed on suicide watch and again "not too long ago," sometime in February 2019, when he talked to Dr. Lo about his medications. He complained that in the jail he is getting only Celexa, while the medications he had previously been prescribed at the hospital before his arrest were Remeron and Seroquel, which jail personnel say he is not allowed to have. He confirmed that he has been receiving Celexa in the jail since January 2019, after he was prescribed the medication in December 2018 while on suicide watch. He confirmed that he was removed from suicide watch on Dr. Lo's orders on December 19, 2018.

When asked to specify the conditions about which he complains, Williamson testified that when placed on suicide watch, his possessions were taken away, he was dressed in a green smock and placed in a holding cell with four other inmates in what should be a one-man cell. He stated that he was kept there for "two or three days," until he saw Dr. Lo, and he would have been kept there if he had not told Dr. Lo that he was okay and no longer feeling that he would hurt himself or others. He testified that the conditions in the holding cell were "dirty, with food trays all around," overcrowded and

cold. He said the cell was about ten-by-ten feet with a toilet and sink and one slab where a mattress was supposed to be located, but there was no mattress. He testified that he saw no medical personnel during those two or three days until he told Dr. Lo he was no longer suicidal and was returned to general population.

He said he receives Celexa for his mental health conditions daily while in the jail, but that he is also supposed to be receiving some additional medications, including Remeron and Seroquel, that were prescribed by the physicians at the psychiatric ward in Chabert Hospital, from which he was released in November 2018 before his arrest. He testified that he spoke to Dr. Lo at the jail about these additional medications and being transported to Chabert Hospital's mental health clinic, but was told that the additional medications are not allowed in the jail and that trips to the mental health clinic were "not allowed anymore . . . I know that years ago, we used to go there" during his previous stays in the jail. He said he understands that Celexa is provided for depression and as a mood stabilizer but that he was not taking Celexa before he was incarcerated and that it is a different medication than what he was taking for his depression and mood issues before his arrest. He said he asked to see Dr. Lo again "about a week ago" and was told he was on the list to see him, but he had not seen him again at the time of the hearing.

Williamson confirmed the notation in his medical records that he was prescribed Gabapentin on January 10, 2019, and that he began receiving it in the jail shortly thereafter. He stated that he was still receiving it in the jail and that it is being given to

him for a previous wrist injury. He said he is also receiving ibuprofen at the jail "three times a day." He said that except for the nurses who deliver his medications daily, the last time he had seen any medical personnel at the jail was Dr. Lo in February 2019.

Williamson stated that during his current stay in Terrebonne, he has been placed in the holding cell during suicide watch only once for the three-day period he previously described. He described his general complaint as being that he cannot receive the help and treatment that he needs for his condition, including a visit to Chabert Hospital's mental health clinic to participate in a program for substance abuse self-medication for his mental health issues. He complained that the doctors at Chabert Hospital tell him he needs certain kinds of treatment, but that Dr. Lo has not provided it in the jail. He also complained that he has not been placed in the medical section at the jail. He said he is not being afforded participation in therapeutic groups or other care that he needs.

After the Spears hearing, I expressly provided plaintiff with an opportunity to supplement and more specifically state his best ADA case. Record Doc. No. 14. On June 26, 2019, plaintiff sent a letter to the court, advising that he was released from Terrebonne on May 1, 2019.[1] Record Doc. No. 18 at p. 1. He further stated that since his release from prison he had been housed in behavioral treatment centers in Lafayette, Lake Charles and Marrero, Louisiana. Id. Plaintiff enclosed medical records with his

---

[1]Plaintiff makes a Scrivener's error in his letter when he states that he was released from jail on "May 1, 2018."

letter, which indicate that he was diagnosed with bipolar affective disorder by a physician at Oceans Behavioral Hospital of Greater New Orleans ("Oceans") in Marrero and that he was discharged from Oceans and transferred to Briscoe Treatment Center ("Briscoe") in Lake Charles, Louisiana. Id. at pp. 5, 8. Plaintiff stated that he currently resides at Briscoe, where he attends group sessions and counseling "all day." Id. at p. 1.

## ANALYSIS

I.    STANDARDS OF REVIEW

A prisoner's pro se complaint must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579–80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim. 28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are

clearly baseless.'" <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. <u>Spears</u>, 766 F.2d at 180. "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326–27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482–83; <u>Williams v. Luna</u>,

909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

The ADA applies to prisons and inmates. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998); Hale v. King, 642 F.3d 492 (5th Cir. 2011). As in Hale, although a Spears hearing has been conducted, the hearing focused on Williamson's Section 1983 claims, and a plaintiff in a pro se case like this one must be provided with the opportunity to amend to plead his best ADA case. Hale, 642 F.3d at 503.

After a Spears hearing and providing an opportunity to amend, a complaint may be dismissed for failure to state a claim or as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176–77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff,

dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony and supplemental written submissions explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state either a cognizable Section 1983 claim of violation of constitutional rights or a valid ADA claim, even under the broadest reading.[2]

## III.    SECTION 1983 MEDICAL CARE CLAIM

Williamson testified that during the time period of his incarceration about which he complains, he was a pretrial detainee in Terrebonne from his arrest on December 3, 2018, until he was convicted eighteen days later on December 21, 2018. Thereafter, he continued to be held in Terrebonne as a convicted inmate, with an anticipated release date of May 1, 2019.

---

[2]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011), <u>cert. denied</u>, 565 U.S. 1263 (2012) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive

misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Shepherd v. Dallas Cnty., 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769–70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, 429 U.S. at 104, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. As discussed above, only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105–06; accord Gregg v. Georgia, 428 U.S. 153, 182–83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The same Eighth Amendment standards detailed above requiring that "the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities," id. at 834 (quotation omitted), and that

-13-

the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

In the Section 1983 medical care context, a showing of deliberate indifference to serious medical needs "requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Tex, Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added). "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).

In this case, Williamson's allegations amount to episodic acts or omissions so that the deliberate indifference standard applies. Williamson's written submissions, as explained by his Spears testimony, negate any inference that defendants acted with deliberate indifference to his medical needs. Some courts have characterized mental illness as a "serious medical need" for purposes of constitutional analysis in Section 1983 claims by prisoners, particularly in circumstances in which the plaintiff also exhibited seriously harmful or severe symptoms or other ailments in combination with a mental illness sufficient to render plaintiff's overall condition serious. See Lemaire v. Maass, 745 F. Supp. 623, 636 n.8 (D. Ore. 1990), vacated on other grounds, 12 F.3d 1444 (9th Cir.

-14-

1993) (depression in combination with epilepsy, hypertension and vertigo presented serious medical need requiring immediate attention); Gibson v. County of Washoe, 290 F.3d 1175, 1194 (9th Cir. 2002) (manic depressive condition exhibited by wild, physically combative behavior leading to heart attack presented serious medical condition by detainee); Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 16, 18 (1st Cir. 1995) (depression including severe anxiety attacks and other "serious symptoms . . . actually experienced while detained" presumed by the court to constitute serious medical need). The conditions described by Williamson and the medical records reflect that his mental health conditions included self-injurious actions, possibly including suicidal ideation. Thus, for purposes of this report and recommendation, I will assume that Williamson's conditions present a serious medical need.

Even assuming, however, that plaintiff's conditions present a serious medical need for constitutional purposes, Williamson has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care for his mental conditions while incarcerated in Terrebonne jail.

Williamson testified and his medical records confirm that, while in Terrebonne, he was seen by a psychiatrist at least twice – once in December 2018 for an evaluation following his placement on suicide watch and another time in February 2019 to discuss

his prescribed medications for his mental health issues. Williamson was also regularly provided with a steady stream of medications for depression and other mental conditions, appropriately prescribed by Dr. Lo in the exercise of medical judgment, and was provided proper substitute medication, Celexa, when Terrebonne jail officials did not permit provision of the specific brands of Williamson's pre-incarceration prescriptions, Remeron and Seroquel. The medical records reflect that upon notice of plaintiff's possible suicidal ideation, jail personnel placed him on suicide watch for his own protection, and he was not removed from suicide watch until he was evaluated by a psychiatrist and confirmed by the psychiatrist to no longer be suicidal. Thus, the medical records establish that Williamson's conditions were appropriately monitored and addressed by medical personnel at Terrebonne.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense. See, e.g., Raspberry v. Johnson, 281 F.3d 1279 (5th Cir. 2001) (citing Domino, 239 F.3d at 754) (plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own); Greer v. Tran, 124 F. App'x 261, 262 (5th Cir. 2005) (no deliberate indifference to serious medical needs when inmate was tested for diabetes mellitus, which was ruled out, although he ultimately died after falling into a diabetic ketoacidotic coma); Harris v. Donaldson, 71 F.3d 876 (5th Cir. 1995) (no deliberate indifference

where prisoner received medical treatment, including blood monitoring, medication and other attention, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for his chronic condition).

Although Williamson has alleged that he did not receive the kind of treatment he thought was appropriate, and he expressed dissatisfaction with the overall quality of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added). No such showing has been made on the current record. In Williamson's case, the course of his mental health treatment, including the provision of appropriate medications and his placement in a suicide watch holding cell in the interest of protecting him from self-injury, is a classic example of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense. Moreover, contrary to ignoring plaintiff's complaints and disregarding his medical needs, the medical records reflect that prison officials promptly placed plaintiff on suicide watch upon notice from a Chabert Hospital patient advocate

that plaintiff had written to the hospital, claiming he was suicidal. In addition, prison officials made arrangements for plaintiff to meet with a psychiatrist shortly after his placement on suicide watch to discuss his suicidal ideation and his prescribed medications for depression and other mental illness.

Contentions like Williamson's that amount to a mere disagreement with the quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs. For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a

legally frivolous argument and fail to state a claim for relief based upon violation of his

constitutional rights under Section 1983.

IV.    SECTION 1983 CONDITIONS OF CONFINEMENT

As discussed above, plaintiff was a pretrial detainee for the first eighteen days of

his confinement in Terrebonne and a convicted prisoner at all other relevant times

concerning the conditions about which he complains.

Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the

standard of liability is the same for episodic acts or omissions of jail officials of the type

alleged in this case. McCarty v. Zapata Cty., 243 F. App'x 792, 794 (5th Cir. 2007)

(citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare, 74 F.3d at 636;

Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999). In Hare, the

Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the
> Eighth Amendment to provide both pretrial detainees and convicted
> inmates with basic human needs, including medical care and protection
> from harm, during their confinement; and (2) that a state jail official's
> liability for episodic acts or omissions cannot attach unless the official had
> subjective knowledge of a substantial risk of serious harm to a pretrial
> detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an

inference that the conditions he described were the result of a prison official's act either

"implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an

identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle, 429 U.S. at 104, applies. Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Williamson's allegations do not rise to the level of violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 847. To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable

"unless the official <u>knows of and disregards an excessive risk to inmate health or safety</u>; the official <u>must both be aware of facts</u> from which the inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>." <u>Id.</u> at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof at a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838–40).

Williamson's written allegations and testimony meet neither of these two requirements. Williamson complains that the conditions of the suicide watch holding cell were unsanitary, cramped, crowded with four to five inmates at a single time, permitted him no access to his personal possessions and lacked a mattress. These conditions, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation.

As to Williamson's complaints regarding uncleanliness of the holding cell, short-term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations. Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004); Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998)); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, restroom four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

As to the lack of a mattress, cramped and crowded cell, cold floor and deprivation of personal possessions during his time on suicide watch, serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib, 138 F.3d at 215 (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez, 522 F.3d 556, 560 (5th Cir. 2008).

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in Davis, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" Davis, 157 F.3d at 1004, 1006. The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for

weeks or months.'" Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686–87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he was confined in the cell for only three days. Id. (quoting Wilson, 501 U.S. at 304).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions and the brief length of confinement described by Williamson do not rise to the level of a constitutional violation. The conditions plaintiff experienced during his three-day stint in the suicide watch cell in Terrebonne jail were neither virtually permanent nor an extreme deprivation of the type that might offend the Constitution, and he suffered no serious physical injuries as a result of any allegedly unsanitary conditions. Unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir.), cert. denied, 114 S. Ct. 393 (1993) (emphasis added); accord White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993), cert. denied, 114 S. Ct. 931 (1994).

Neither Williamson's medical records nor his testimony support the conclusion that he suffered any serious physical harm as a result of the conditions of the suicide watch cell during his three-day stay. In addition, plaintiff has not shown that Terrebonne prison officials were deliberately indifferent to inmate health or safety in that officials knew of and disregarded an excessive risk to inmate health or safety. Thus, Williamson

has not alleged serious harm resulting from these problems to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement. Under these circumstances, plaintiff has failed to state a claim of constitutional magnitude, and his claim concerning the conditions of his confinement must be dismissed for failure to state a cognizable constitutional claim under Section 1983.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on convicted prisoners. "Prison conditions constitute cruel and unusual punishment if they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting imprisonment.'" Hamilton v. Lyons, 74 F.3d 99, 103–04 (5th Cir. 1996) (quoting Rhodes, 452 U.S. at 347) (citing Estelle, 429 U.S. at 103; Hutto, 437 U.S. at 687); accord Stanfield v. Gusman, 2010 WL 2133877, at *3 (E.D. La. Apr. 21, 2010) (Roby, M.J.), report and recommendation adopted, 2010 WL 2075550 (E.D. La. May 20, 2010) (McNamara, J.).

"Like other Eighth Amendment claims, a conditions-of-confinement claim must satisfy tests for both objective and subjective components." Davis, 157 F.3d at 1006 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)); accord Wilson, 501 U.S. at 298–99; Downey v. Denton County, 119 F.3d 381, 385–86 (5th Cir. 1997). To succeed on a claim of unconstitutional conditions of confinement, this court must ask if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively

'harmful enough' to establish a Constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson, 501 U.S. at 298, 303). If the court finds that either the subjective or objective component of the test is not met, it need not address the other component. Davis, 157 F.3d at 1006.

With respect to the objective component, the Supreme Court in Wilson noted that routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes. Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 347). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson, 503 U.S. at 9.

Thus, conditions within a prison may constitute cruel and unusual punishment if they result in "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347. Otherwise, "to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. Conditions that "cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Id. The Eighth Amendment "may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." Wilson v. Lynaugh, 878 F. 2d 846, 849 (5th Cir.), cert. denied, 493 U.S. 969 (1989) (footnote omitted).

-26-

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard. Wilson, 501 U.S. at 303. "Deliberate indifference," as defined above, means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing Farmer, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." Id. (citing Farmer, 511 U.S. at 842 & n.8). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838–40).

Williamson has alleged no facts which show that defendants or any other party acted with "deliberate indifference" in creating the conditions about which he complains. Plaintiff has not alleged a "serious risk of harm" and has not alleged facts sufficient to show that defendants actually drew an inference that an excessive risk of harm to plaintiff existed because of the conditions he described. In fact, as explained in greater detail below, every aspect of the current record, from Williamson's own testimony to the

extensive record of his medical treatment, confirms that his placement in a suicide watch

holding cell was wholly appropriate, as a response to his reported suicidal ideation and

in furtherance of the treatment and monitoring of his mental condition.

Maintenance of prison security is a legitimate function of prison officials, who

must be accorded broad discretion in that function. See Waganfeald v. Gusman, 674 F.3d

475, 485 (5th Cir. 2012), petition for cert. filed, 81 U.S.L.W. 3064 (U.S. July 18, 2012)

(No. 12-85) (citing Whitley v. Albers, 475 U.S. 312, 322 (1986); Bell v. Wolfish, 441

U.S. 520, 546–47 (1979)) ("[S]ecurity considerations are peculiarly within the province

and professional expertise of corrections officials, and, in the absence of substantial

evidence in the record to indicate that the officials have exaggerated their response to

these considerations, courts should ordinarily defer to their expert judgment in such

matters.") (quotation omitted). Certainly, preventing Williamson from killing or injuring

himself by enforcing prison disciplinary rules prohibiting self-harm and other dangerous

activities is prudent prison administration in furtherance not only of prison discipline and

security but also of fulfilling the obligation to protect inmates from harm, even if the risk

of harm is self-imposed.

Generally, the Constitution does not give rise to any protectable "interest in

avoiding transfer to more adverse conditions of confinement." See Meacham v. Fano,

427 U.S. 215, 225 (1976) (prisoner has no constitutional interest in avoiding placement

in maximum security as opposed to low-security facility). Instead, the Constitution

provides inmates with protection only from classification or assignment that "imposes atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Thus, as the United States Supreme Court has noted in another constitutional context concerning inmates' due process rights, placement in a "supermax" prison unit where inmates face more restrictive conditions of confinement than in other facilities does not result in violation of constitutional rights, unless the conditions "impose an atypical and significant hardship within the correctional context." Wilkinson v. Austin, 545 U.S. 209, 221–24 (2005).

In this case, the temporary and restrictive conditions in the suicide watch holding cell described by Williamson do not rise to the level of cruel and unusual punishment proscribed by the Eighth Amendment, or even to the level of a true "supermax" facility of the type described in Wilkinson, 545 U.S. at 214. Conditions such as those described by Williamson do not allege the kind of serious harm or deprivation of basic human needs resulting from deliberate indifference by prison officials to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement. Under these circumstances, plaintiff has failed to state a claim of constitutional magnitude, and this claim must be dismissed.

V.    AMERICANS WITH DISABILITIES ACT CLAIMS

Plaintiff seeks monetary damages, injunctive relief and transfer to a hospital facility under the Americans with Disabilities Act ("ADA"), based on Terrebonne jail

officials' alleged denial of plaintiff's access to specific medications, therapy, group programs and regular trips to a mental health facility, by reason of plaintiff's mental disability. Record Doc. No. 1, Complaint at ¶ V. As stated above, the ADA applies to prisons and inmates. <u>Pennsylvania Dep't of Corrections</u>, 524 U.S. 206; <u>Hale</u>, 642 F.3d at 492. As an initial matter, plaintiff's claims for injunctive relief and transfer to a hospital facility are moot in light of plaintiff's release from Terrebonne on May 1, 2019. Record Doc. No. 18.

Under Title II of the ADA, a plaintiff states a claim for relief if he alleges "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is <u>by reason of his disability</u>." <u>Hale</u>, 642 F.3d at 499 (citing <u>Melton v. Dallas Area Rapid Transit</u>, 391 F.3d 669, 671–72 (5th Cir. 2004)) (emphasis added); 42 U.S.C. § 12132.

Williamson alleges that he is disabled by virtue of his mental illness, including "depression . . . suicidal tendencies, [and] mood and behavior alterations." Record Doc. No. 1, Complaint at ¶ IV. An individual is "disabled" under the ADA if he has a physical or mental impairment that substantially limits one or more major life activity, he has a record of such an impairment, or he is subjected to an action prohibited under the ADA because of an actual or perceived physical or mental impairment. 42 U.S.C. § 12102.

"Depression and other mental illnesses can qualify as disabilities for purposes of the ADA." Stradley v. Lafourche Commc'ns, Inc., 869 F. Supp. 442, 443 (E.D. La. 1994). Sufficient record evidence of depression as a qualifying disability under the ADA includes history of antidepressants, medical certificates and hospitalization. Hernandez-Echevarria v. Walgreens de Puerto Rico, Inc., 121 F. Supp. 3d 296, 302 (D.P.R. 2015). Plaintiff's medical records, submissions and testimony indicate a history of bouts of depression and suicidal ideation, a significant anti-depressant prescription regimen while in and out of jail to treat his mental illness, hospitalization in November 2018 following a suicide attempt by drug overdose, driving into a tree while drunk and under the influence of drugs in a second suicide attempt and placement on suicide watch for three days while incarcerated in Terrebonne jail. Following his release from Terrebonne, plaintiff submitted documentation that he had been diagnosed with bipolar affective disorder by a physician at Oceans Behavioral Hospital of Greater New Orleans. Record Doc. No. 18 at p. 9. The record shows that plaintiff's depression and mental illness limited his major life activities, which are defined as activities of central importance to an individual's daily life, such as caring for oneself. Hale, 642 F.3d at 500. Plaintiff's history of depression and multiple suicide attempts indicate that his mental impairments limited his ability to engage in the most basic life activity there is – keeping himself alive. Based on the record, plaintiff has sufficiently alleged that his impairments of depression and mental illness constitute a qualifying disability under the ADA.

However, the ADA is a <u>discrimination</u> statute. The fact that a person has a qualifying disability is <u>not</u> alone sufficient to state a cognizable ADA claim. Instead, the person with a disability must also establish causation, <u>i.e.</u>, that he was discriminated against in the provision of benefits, services or programs <u>by reason of his disability</u>.

Plaintiff asserts in his complaint and testimony that defendants discriminated against him by denying him the medications Remeron and Seroquel to treat his mental health issues. As discussed above, Williamson's medical records indicate that he regularly was provided with a steady stream of appropriately prescribed medications, including those for depression and other mental conditions. The medical record and plaintiff's testimony indicate that prison officials did not provide plaintiff with his pre-incarceration prescriptions of Remeron and Seroquel based on Terrebonne jail regulations and Dr. Lo's professional judgment, <u>not</u> by reason of plaintiff's alleged disability. Moreover, the medical records show that plaintiff was provided a proper substitute medication to treat his mental illness, Celexa, in lieu of the non-permitted medications. Thus, Terrebonne prison officials did not discriminate against plaintiff by reason of his disability in denying him his pre-incarceration prescriptions, but rather denied them in compliance with Terrebonne jail regulations and the administering doctor's exercise of professional judgment. Moreover, plaintiff was not denied access to prescriptions for depression and mental illness, because the prison provided plaintiff with a proper substitute medication to address these issues. Plaintiff therefore has failed to

state a claim for relief under Title II of the ADA as to his denial of the specific prescription brands of Remeron and Seroquel.

Plaintiff also asserts in his complaint and testimony that defendants discriminated against him by denying him access to therapy, group programs and regular trips to a mental health facility. Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). A prison is a public entity under Title II of the ADA and prison programs fall under the scope of Title II. See Pennsylvania Dep't of Corrections, 524 U.S. at 210 ("Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')."). Williamson alleges that he was denied access to appropriate programs because of his depression and mental illness. However, he stated specifically in his written submissions and testimony that the Terrebonne jail does not provide therapy, group programs or transportation service to any outside mental health clinic or programs that might be provided by other entities or agencies to any of the inmates at Terrebonne. Record Doc. No. 7. at pp. 4–5.

Title II of the ADA is limited to programs, services and activities "of a public entity." 42 U.S.C. § 12132 (emphasis added). Therefore,

> if the entity <u>does not provide</u> the program, service or activity as a general matter, then the entity has no duty under Title II to provide an accommodation for disabled persons. This makes sense because the goal of the ADA is to provide <u>equal access</u> to individuals with disabilities to opportunities and benefits, <u>not to provide privileges withheld from everyone else</u>.

<u>Irby v. Sumnicht</u>, 683 F. Supp. 2d 913, 917 (W.D. Wis. 2010) (emphasis added) (holding that prison had no duty to provide television to disabled plaintiff when prison did not provide television to any prisoners in plaintiff's unit); <u>see also</u> <u>Dalton v. Subaru-Isuzu Auto., Inc.</u>, 141 F.3d 667, 679 (7th Cir. 1998) (ADA is a "nondiscrimination statute," not a "mandatory preference statute"). Therapy, group programs and transportation service to a mental health facility <u>do not exist</u> at the jail. Under the ADA, plaintiff's denial of access to therapy, group programs and transportation to any outside mental health facility is not discriminatory because <u>none of the Terrebonne inmates</u>, disabled or otherwise, have access to these programs. Williamson was not discriminated against by reason of his disability. He was not treated differently from other inmates. The ADA does not mandate the programs and privileges that Williamson seeks in this case.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), including his ADA claims, having been given the opportunity to plead his best ADA case.

-34-

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this _____15th_____ day of July, 2019.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.